J-S15001-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RASHEE LAMONT HUNTER | : | |
| | : | |
| Appellant | : | No. 1645 EDA 2025 |

Appeal from the Judgment of Sentence Entered August 10, 2023
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0003581-2021

BEFORE:   OLSON, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                    **FILED JUNE 30, 2026**

Appellant, Rashee Lamont Hunter, appeals from the judgment of sentence entered August 10, 2023.  We affirm.

In January 2020, Keenan Mason (the "Victim") lived in an apartment above the Mart Deli along Edgmont Avenue in Chester, Delaware County, Pennsylvania.  The Victim sold illegal drugs out of the apartment.  "On January 26, 2020, at approximately 8:45 p.m., Chester [County] police officers responded to [the Mart Deli] where they discovered [the Victim] suffering from a gunshot wound.  … [The Victim] was [later] transferred to Crozer-Chester Medical Center, where he died on January 28, 2020."  Trial Court Opinion, 8/14/25, at 1.

_____

[*] Former Justice specially assigned to the Superior Court.

After the incident, Detective Timothy Deery of the Criminal Investigation Division of the Office of the District Attorney learned that, a week prior to the shooting, an individual known as "Cuzzo" "visited [the Victim's] apartment to package cocaine for distribution." *Id.* at 2. At that time, "Cuzzo" had a handgun which "he allowed the [V]ictim to handle." *Id.* Thereafter, the Victim and two others robbed "Cuzzo" of the handgun at gunpoint. Through further investigative efforts, Detective Deery identified "Cuzzo" as Appellant. Thereafter, Detective Deery proceeded to apply for a series of search warrants relating to Appellant's electronic footprint. More specifically, on March 5, 2020, Detective Deery obtained a search warrant to secure Appellant's cellular telephone records from his service provider, T-Mobile/Metro PCS; on June 18, 2020, Detective Deery obtained a search warrant to recover Appellant's Google account information; and, on August 17, 2020, Detective Deery obtained a search warrant to obtain additional telephone records from Samsung. In addition, Detective Deery interviewed several witnesses to gather additional information relating to the Victim's death. Of relevance, on September 10, 2020, Detective Deery interviewed Shantal Byrd, who identified Appellant as "Cuzzo" and implicated him in the Victim's death.

Ultimately, on September 22, 2020, the Commonwealth filed criminal charges against Appellant relating to the Victim's death. On May 12, 2023, Appellant filed an omnibus pre-trial motion, arguing that the aforementioned search warrants, which sought "various forms of electronic dat[a] relating to [Appellant]," were not supported by probable cause. Appellant's Omnibus

J-S15001-26

Pre-Trial Motion, 5/12/23, at *2 (unpaginated).  Appellant, therefore, asked the trial court to suppress all evidence recovered through execution of the search warrants.  That same day, the Commonwealth filed a motion seeking to admit Ms. Byrd's preliminary hearing testimony at trial under Pa.R.E. 804 (When the Declarant is Unavailable as a Witness).[1]  The trial court convened a hearing on the parties' motions on May 15, 2023.  Ultimately, the trial court denied Appellant's suppression motion, concluding that the affidavits offered to support the various search warrants established probable cause.  In

---

[1] Rule 804 of the Pennsylvania Rules of Evidence states, in relevant part, as follows:

> **(a) Criteria for Being Unavailable.** A declarant is considered to be unavailable as a witness if the declarant:
>
>> (5) is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure:
>>
>>> (A) the declarant's attendance, in the case of a hearsay exception under Rule 804(b)(1) or (6)[.]
>
> **(b) The Exceptions.** The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:
>
>> (1) Former Testimony. Testimony that:
>>
>>> (A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and
>>>
>>> (B) is now offered against a party who had--or, in a civil case, whose predecessor in interest had--an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

Pa.R.E. 804(a)(5) and (b)(1).

- 3 -

addition, the trial court determined that Ms. Byrd's preliminary hearing testimony was admissible under Pa.R.E. 804.

Appellant's jury trial commenced on May 16, 2023. On May 19, 2023, the jury convicted Appellant of first-degree murder, conspiracy, and firearms not to be carried without a license.[2] On August 10, 2023, the trial court sentenced Appellant to a mandatory term of life imprisonment without the possibility of parole for his first-degree murder conviction, a consecutive term of incarceration for conspiracy, and a concurrent one to two year sentence for firearms not to be carried without a license. This appeal followed.[3]

Appellant raises the following issues for our consideration.

1. Whether [Appellant's] rights against unreasonable searches and seizures, guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Article I[,] Section 8 of the Pennsylvania Constitution[, were violated] by the admission of incriminating evidence

---

[2] 18 Pa.C.S.A. §§ 2502(a), 903(a), and 6106(a)(1), respectively.

[3] Appellant appealed his judgment of sentence on August 28, 2023, but the appeal was subsequently dismissed for failure to complete and return a docketing statement in accordance with Pa.R.A.P. 3517. On January 18, 2024, Appellant, through counsel, filed a petition pursuant to the Post-Conviction Relief Act ("PCRA"), asking the trial court to reinstate his direct appeal rights *nunc pro tunc*. The court granted Appellant *nunc pro tunc* relief on March 5, 2024. Appellant, through counsel, then filed a notice of appeal but, because Appellant's counsel was in a car accident and suffered significant injuries, Appellant's second appeal was dismissed on September 27, 2024 for failure to file an appellate brief. Thus, on May 12, 2025, Appellant, through counsel, filed a second PCRA petition, again asking for the reinstatement of his direct appeal rights *nunc pro tunc*. The court entered an order on May 29, 2025 reinstating Appellant's direct appeal rights *nunc pro tunc*. This timely appeal followed.

obtained by police under the authority of search warrants that were issued without probable cause[?]

2. Whether the trial court erred as a matter of law and abused its discretion in denying [Appellant's] motion to strike Juror []21, where the juror openly expressed bias in favor of police and further believed that a person who is arrested is not innocent, and the juror was not adequately rehabilitated[?]

3. Whether the trial court erred a matter of law and abused its discretion in admitting [at trial] the preliminary hearing testimony of witness Shantal Byrd[,] where the Commonwealth failed to demonstrate due diligence in locating [Ms. Byrd] and [Appellant] did not have a full and fair opportunity to cross-examine the witness at the preliminary hearing[?]

Appellant's Brief at 4-5.

In his first issue, Appellant challenges the trial court's order denying his motion to suppress because, in his view, the affidavits attached to the March 5, 2020, June 18, 2020, and August 17, 2020 search warrants failed to establish probable cause. Appellant contends that the affidavits in support of the aforementioned search warrants were identical, simply "establish[ed] that Appellant is 'Cuzzo,'" and are based upon "telephone calls made over the George Hill prison [tele]phone system," *i.e.*, hearsay. Appellant's Brief at 28. We disagree.

When reviewing a challenge to an order that denied suppression, our standard of review is

> limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the Commonwealth as remains

- 5 -

uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the [trial court's legal conclusions] are subject to plenary review.

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. Super. 2017) (citation omitted and formatting altered).

Before an issuing authority may issue a constitutionally valid search warrant, he or she must be furnished with information sufficient to persuade a reasonable person that probable cause exists to conduct a search. *Commonwealth v. Jones*, 484 A.2d 1383, 1387 (Pa. 1984) (citations omitted). "[T]he question of whether probable cause exists for the issuance of a search warrant must be answered according to the 'totality of the circumstances' test articulated in *Commonwealth v. Gray*, 503 A.2d 921 (Pa. 1985), and its Pennsylvania progeny, which incorporates the reasoning of the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213 (1983)." *Commonwealth v. Arthur*, 62 A.3d 424, 432 (Pa. Super. 2013) (some quotations and citations omitted). In accordance with *Gray* and *Gates*, "the task of the issuing authority is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of

a crime will be found in a particular place." **Gray**, 503 A.2d at 925, *quoting*

**Gates**, 462 U.S. at 238.

With respect to a court that is reviewing an issuing authority's probable

cause determination:

> [the] reviewing court is not to conduct a *de novo* review of the issuing authority's probable cause determination, but is simply to determine whether or not there is substantial evidence in the record supporting the decision to issue a warrant. … In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner.

**Commonwealth v. Jones**, 988 A.2d 649, 655 (Pa. 2010) (citations,

quotations, and corrections omitted). Thus, although "[r]easonable minds

frequently may differ on the question whether a particular affidavit establishes

probable cause," the deference afforded a magistrate judge ensures that, "[i]f

a substantial basis exists to support the magistrate's probable cause finding,

[the trial court] must uphold that finding even if a different magistrate judge

might have found the affidavit insufficient to support a warrant." **United**

**States v. Leon**, 468 U.S. 897, 914 (1984); **United States v. Miknevich**,

638 F.3d 178, 182 (3rd Cir. 2011) (citations and quotations omitted).

Accordingly, "[w]e must limit our inquiry to the information within the four

corners of the affidavit submitted in support of probable cause when

determining whether the warrant was issued upon probable cause." **Arthur**,

62 A.3d at 432.

A review of the affidavits in support of probable cause supporting the March 5, 2020, June 18, 2020, and August 17, 2020 search warrants reveal the following.[4] Initially, the affidavits describe the video surveillance of the murder obtained from the surrounding area. **See** N.T. Suppression Hearing, 5/15/23, at 19; **see also** Exhibit C-1 at 2. The surveillance depicted the Victim leaving his apartment and, ten seconds later, "a male wearing a large tan jacket" approaching him and "discharge[ing] a firearm numerous times . . . before fleeing." Exhibit C-1 at 2. Because the shooting occurred so quickly after the Victim left his apartment, the affiant determined that the "shooter was aware of the [Victim's] whereabouts and movements, likely *via* a third party." **Id.** at 2-3.

Thereafter, the affiant details his search of the Victim's cellular telephone wherein he discovered that, "four days prior to his murder," the Victim "told an unknown person in a text[ual] message" that "Rocko and Skoob" robbed him at gun point.[5] **Id.** at 3. This information was confirmed

_____

[4] The affidavits supporting the March 5, 2020, June 18, 2020, and August 17, 2020 search warrants are different but, as discussed **infra**, include a similar "chronology [of the entire] investigation." N.T. Suppression Hearing, 5/15/23, at 10. Appellant clarified during the May 15, 2023 hearing that he attached the June 18, 2020 search warrant as an "example" but was, in fact, challenging all of the search warrants. N.T. Suppression Hearing, 5/15/23, at 6. In response, the Commonwealth admitted the affidavit of probable cause supporting the June 18, 2020 search warrant into evidence. **See id.** at 19.

[5] From our review of the record, there appears to be two robberies that play into this matter. The incident the Victim referred to in this textual message to an unknown individual, more specifically, the incident wherein the Victim
*(Footnote Continued Next Page)*

by two additional people "[d]uring interviews conducted as part of [the] homicide investigation." *Id.* Based upon the foregoing, the affiant obtained the contact information for "Rocko" and, subsequently, for "Skoob." *Id.* The affiant then reviewed telephone calls made during the period of November 1, 2019 and February 18, 2020 between the telephone numbers associated with "Rocko" and "Skoob" and incarcerated persons at George Hill Prison. The affiant specifically "obtain[ed] prison calls from individuals who [were] known to frequent" the area where the Victim was killed, *i.e.*, the "Madi Block" because, in his experience, these individuals would likely discuss the homicide. *Id.* This surveillance led the affiant to discover a conversation that took place on February 16, 2020 between "Skoob" and an incarcerated person, identified within the affidavits, wherein Skoob "mentioned a robbery [the Victim] did on a male named 'Cuzzo'" and stated that "'Cuzzo' . . . shot and killed [the Victim]." *Id.* at 4. This information was then verified by "two separate civilians" interviewed during the investigation, both of whom "independently provided the name of 'Cuzzo' as the street name of the person that shot [the Victim]." *Id.*

The affidavits then explain the steps the affiant went through to identify Cuzzo as Appellant. First, the affiant contacted Chester County Narcotics Officer Mark Barag and asked him to "ask his [confidential] informants for help identifying 'Cuzzo.'" *Id.* A "reliable informant" subsequently informed Officer

_____

was robbed by "Rocko" and "Skoob," appears to be a separate robbery from the one which the Victim committed against Appellant.

- 9 -

Barag that "Cuzzo" was Appellant and provided the affiant with Appellant's photograph, as well as his date of birth. *Id.* Second, the affiant sought to "independently corroborate" Appellant to be "Cuzzo" by conducting a "Facebook search for 'Cuzzo.'" *Id.* This search led the affiant to Appellant's Facebook profile which indicated "his location [in] Chester, Pennsylvania," as well as photographs that matched those provided by Officer Barag. *Id.* Third, a witness came forward, identified in the affidavits as "Witness #1," and shared information regarding the robbery that took place prior to the Victim's death and "positively identified [Appellant] as who he/she knew as 'Cuzzo.'" *Id.* at 5. Finally, the affiant conducted video surveillance of Appellant which was used to compare his "appearance, including clothing, size, physical stature and gait" to that of the shooter. *Id.* at 5-6.

Upon review, we conclude that Appellant is not entitled to relief. First, in contrast to Appellant's claims, the affidavits in support of the March 5, 2020, June 18, 2020, and August 17, 2020 search warrants are not identical. Indeed, Detective Deery specifically testified at the May 15, 2023 suppression hearing that the affidavits were comprised of a "chronology [of the entire] investigation" that subsequently included additional, relevant information, for each search warrant. N.T. Suppression Hearing, 5/15/23, at 10; *see also* Exhibit C-49 (including information relevant to Appellant's identity); Exhibit C-58 (including information relating to Appellant's email correspondence with his probation officer, Megan Flemming, and e-mail address); and Exhibit C-45 (including information relating to Appellant's arrest on August 10, 2020 in an

unrelated incident wherein officers recovered firearm ballistics similar to those recovered the night of the Victim's death and information related to Appellant's cellular telephone). Second, Appellant's contention that the affidavits in support of probable cause are based solely upon unsubstantiated hearsay is belied by the record. While the identification of the Victim's killer as "Cuzzo" initially came from prison telephone calls, this information was not only based upon a targeted search of the Victim's cellular telephone, but subsequently verified by other individuals interviewed during the investigation. In addition, the affidavits explain the specific investigative efforts undertaken to confirm Appellant's identity as "Cuzzo." In view of the foregoing, the trial court did not abuse its discretion in denying Appellant's motion to suppress.

In his second issue, Appellant challenges the trial court's decision to deny his motion to strike a juror for cause. In his final issue, Appellant argues that the trial court erred in admitting preliminary hearing testimony of an unavailable witness, Shantell Byrd. We have reviewed the briefs of the parties, the relevant law, the certified record, and the opinion of the able trial court judge, the Honorable Mary Alice Brennan. We conclude that Appellant is not entitled to relief in this case for the reasons expressed in Judge Brennan's August 14, 2025 opinion. Therefore, we affirm based on Judge Brennan's opinion and adopt it as our own. In any future filing with this or any other court addressing this ruling, the filing party shall attach copies of Judge Brennan's August 14, 2025 opinion.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/30/2026